# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGUS M., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 8:22-cv-00205-PD <br><br> **MEMORANDUM OPINION AND ORDER VACATING AGENCY DECISION** |

Plaintiff challenges the denial of his application for disabled widower's benefits.[1] The Court concludes that the Administrative Law Judge ("ALJ") erred in discounting Plaintiff's subjective symptom testimony. For the reasons stated below, the Court finds that this matter should be remanded on an open record for further proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the United States Judicial Conference.

I.   **Proceedings Below and Disputed Issues**

On March 3, 2020, Plaintiff filed an application for disabled widower's benefits alleging disability since June 1, 2017. [Administrative Record ("AR") 30; Joint Stipulation ("JS") 3.][2] Plaintiff's application was denied administratively on July 9, 2020, and upon reconsideration on November 24, 2020. [AR 30.] Plaintiff requested a hearing, which was held on October 7, 2021, before an ALJ. [AR 30.] Plaintiff appeared without counsel, and the ALJ heard testimony from Plaintiff, a medical expert, and a vocational expert ("VE") via video conferencing due to the COVID-19 Pandemic. [AR 30.] On November 3, 2021, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. [AR 27-42.] The Appeals Council denied Plaintiff's request for review on January 28, 2022, rendering the ALJ's decision the final decision of the Commissioner. [AR 1-6.]

The ALJ followed the requisite five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2017, the alleged onset date. [AR 32 ¶ 7.] At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status post-surgeries." [AR 33, ¶ 1.] The ALJ found that these impairments significantly limit the ability to perform basic work activities. [AR 33.] At step three, the ALJ found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [AR 33, ¶ 4.]

---

[2] The Administrative Record is CM/ECF Docket Numbers 16-1 through 16-17 and the Joint Stipulation is Docket Number 17.

Before proceeding to step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work, defined as follows:

> Claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for a total of 6 of 8-hour day; and the use of the cane as needed; sit (with normal breaks) for a total of 6 of 8-hour day; and all occasional postural limitations except no climbing ladders, ropes, or scaffolds.

[AR 33 ¶ 6 (citing 20 C.F.R. § 404.1567(b)).]

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a general office clerk. [AR 35, ¶ 5.] Accordingly, the ALJ concluded that Plaintiff has not been under a disability from June 1, 2017, through the date of the decision. [AR 35, ¶ 8.]

Plaintiff raises two disputed issues:

(1) Whether the ALJ properly considered Plaintiff's allegations regarding his pain and limitations.

(2) Whether new and material evidence supports remand because the ALJ's determination is not supported by substantial evidence

[JS 2.]

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a

conclusion." *Id.*; *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[3]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

### III. Discussion
#### A. The ALJ's evaluation of plaintiff's subjective symptom testimony

##### 1. Relevant law

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir.

---

[3] The Court notes that although statements in unpublished Ninth Circuit opinions "may prove useful[ ] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

4

2020) (quoting *Treichler*, 775 F.3d at 1102); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same). Additionally, an ALJ may consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018). Inconsistent daily activities may also "provide a justification for rejecting symptom testimony," but "the mere fact that a plaintiff has carried on certain daily activities [] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted). "The ALJ must make specific findings relating to [the daily] activities and their transferability to a work setting to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted); *Weirick v. Saul*, 825 F. App'x 446, 449 (9th Cir. 2020) (citing *Orn*).

Further, when evaluating the record, an ALJ may not selectively choose evidence and rely upon only those materials that support the agency's denial of benefits. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Miller v. Berryhill*, 730 F. App'x 526, 527 (9th Cir. 2018) (same).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133,

1138 (9th Cir. 2014).

### 2. Plaintiff's Testimony

Plaintiff testified that he stopped working in 2017 due to his back and neck pain becoming more severe, his colitis, and irritable bowel syndrome. [AR 51.] Plaintiff explained the pain was terrible at the time, he could not move well, and described his spinal cord "is like a Z." [AR 51.] Plaintiff stated that he tried to continue working after the alleged onset date until about the end of 2017. [AR 52.] Plaintiff further explained that during this time he used an adjustable height desk, but the damage to his spine was "just too bad" so he stopped working and had surgery. [AR 52-53.] When asked how long he was able to walk at that time, Plaintiff testified that he had difficulty walking for long periods and could only do so for approximately 300-400 feet. [AR 54.] Plaintiff further testified that he could at most lift five to ten pounds, and sometimes used a cane or walker but was embarrassed by it. [AR 55.] Plaintiff also stated that he could not drive far distances. [AR 55.] Plaintiff testified that on a typical day he would get up, stretch, and move around due to the aching in his body. [AR 56.] In terms of other daily activities, Plaintiff stated he would water the plants outside. [AR 56.] Plaintiff reiterated that he was unable to continue working in 2017 because of his back and neck pain and stomach conditions. [AR 56.] When asked to further elaborate, Plaintiff explained that issues with his hips, back, neck, and focus prevented him from physically continuing to work as an account executive/lender. [AR 58-59.]

### 3. Analysis

As an initial matter, in order to be entitled to disabled widower's benefits a plaintiff must establish that they are the widower of the deceased worker, at least 50 years old, unmarried (unless one of the exceptions set forth in 20 C.F.R. 404.335(e) applies) and have a disability that began before the

end of the prescribed period. *Andrew V. v. Saul*, 2020 WL 4572682, at * 2 (E.D. Wash. Aug. 7, 2020) (citing 20 C.F.R. § 404.335). Here, the prescribed period began on September 30, 2010, the date the wage earner died, and ended on September 30, 2017.[4] [AR 30.] Thus, Plaintiff must establish that he was disabled within the meaning of the SSA between June 1, 2017, the alleged onset date, and September 30, 2017, the end of the prescribed period. *Id.*

In this case, the ALJ did not find that Plaintiff had engaged in any degree of malingering – as evidenced by the ALJ's statement to the effect that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR 34.] Therefore, the ALJ was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms. *Trevizo,* 871 F.3d at 678. The Court finds that the two reasons the ALJ provided for rejecting Plaintiff's statements—inconsistency with the medical evidence and daily activities—do not meet this burden.

First, the ALJ summarized the medical evidence in the record concerning Plaintiff's physical impairments, but never identified the inconsistency with Plaintiff's testimony. [AR 34-35.] The ALJ noted that prior to the alleged onset date, an MRI of Plaintiff's spine "was positive for status post-surgical fusion and internal fixation device at L5-S1" and a CT scan of the lumbar spine "showed degenerative changes from L1 to L4; disc extrusion at L3-4; neural foraminal L1-2 and L2-3; and postsurgical changes." [AR 34 (citing Exh. 5F, 6F, 7F, 8F, 9F, 15F, 16F, 30F, 31F).] The ALJ then highlighted the opinion of Dr. Moheimani, who evaluated Plaintiff on June 17,

---

[4] The prescribed period ends either seven years after the worker's death or seven years after the widower was last entitled to survivor's benefits, whichever is later. 20 C.F.R. § 404.335(c)(1).

2017, and found Plaintiff's motor strength was normal and his range of motion only mildly reduced. [AR 34 (citing AR 618-626).] The ALJ noted Dr. Moheimani diagnosed Plaintiff with "cervical and lumbar strain, multilevel arthropathy and a history of prior decompression." *Id.* The ALJ also highlighted the opinion of Dr. Dinh, who evaluated Plaintiff on July 3, 2017, for pain in his neck, back, and shoulder. [AR 34.] The ALJ noted that Dr. Dinh found tenderness and limited range of motion in the cervical and lumbar spine and shoulders, a slow gait, but normal motor strength. [AR 34 (citing Exh. 6F, 15F).] Dr. Dinh diagnosed Plaintiff with "multiple musculoligamentous strains of the cervical, thoracic, and lumbar spine and shoulders with lumbar radiculitis." *Id.* The ALJ then stated that other medical reports contained in the record were outside the period at issue but nevertheless "the undersigned considered the entire medical evidence in rendering his decision including the consultative examiners." [AR 35.]

However, the ALJ failed to explain how any of the medical evidence undermined or contradicted Plaintiff's statements concerning the intensity, persistence or limiting effects of his pain. The ALJ was required to do more than just summarize the pertinent medical records as a basis for rejecting Plaintiff's testimony. *Lambert,* 980 F.3d at 1278 ("Although the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.") (quoting *Brown-Hunter*, 806 F.3d at 494); *see also id.* at 1268 ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."). Here, the ALJ never identified which testimony he found not credible and never explained which evidence contradicted that testimony. [*See* AR 34-35.] While the ALJ was not required to provide a line-by-line analysis Plaintiff's testimony, the ALJ erred by

offering nothing more than the non-specific conclusion that Plaintiff's testimony was inconsistent with the medical evidence without also explaining why. *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1103; *Burrell*,775 F.3d at 1138.); *see also Moore v. Colvin*, 743 F.3d 1118, 1122 (9th Cir. 2014) (condemning the use of boilerplate language unless an ALJ further engages in a more detailed credibility analysis "because it fails to link the conclusory statements made with objective evidence in the record.").

The second reason the ALJ rejected Plaintiff's testimony was due to inconsistency with Plaintiff's daily activities. [AR 34 (citing AR 43-67, 299-306).] This reasoning is similarly flawed. The ALJ highlighted Plaintiff's function report, where he reported that he has difficulty in lifting, squatting, bending, standing, reaching, kneeling, talking, hearing, completing tasks, concentrating, using his hands, and getting along with others due to his conditions. [AR 34 (citing AR 299-206).] The ALJ discredited these claims because "[Plaintiff] has no problem taking care of his personal hygiene; does not need any special reminders; can cook; can pay bills; has hobbies and interests in reading and watching television on daily and weekly basis." [AR 34.]

However, the ALJ made no attempt to explain how any of these activities undermined Plaintiff's function report, testimony, or translated in the ability to work a full-time job. *Orn*, 495 F.3d at 639. For example, the fact that Plaintiff stated in his function report that his hobbies and interests include reading and watching television—does not in itself—contradict Plaintiff's statements regarding the limiting effects of his back and neck impairments. [*See* AR 299-306.]; *Revels*, 874 F.3d at 667 ("the mere fact that a plaintiff has carried on certain daily activities [] does not in any way detract from [his] credibility as to [his] overall disability.") Further, Plaintiff's ability to walk short distances, pay his bills, cook, and take care of his hygiene does

not necessarily impact the believability of his symptom testimony or establish that he engages in work-related skills on a regular basis. *Id.* Thus, the ALJ erred in discounting Plaintiff's statements without making specific findings relating to Plaintiff's daily activities and their transferability to the workplace. *Burch*, 400 F.3d at 681; *see also Trevizo*, 871 F.3d at 682 ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

Because the ALJ failed to provide a specific, clear, and convincing reason for discounting Plaintiff's statements, the ALJ erred in discrediting Plaintiff's subjective symptom testimony. The Court does not find this error harmless. If the ALJ properly credited Plaintiff's testimony, it is possible that the ALJ could have set an RFC that would lead to a finding that Plaintiff is unemployable. As such, the ALJ's error was not "inconsequential to the ultimate nondisability determination." *Treichler*, 775 F.3d at 1099.

### B. Other Issues

Plaintiff contends that the ALJ's decision is also erroneous for one other reason. [JS 2, 24-31.] The Court does not address this issue in light of its conclusion that the case be remanded on an open record. *Google LLC v. Oracle America, Inc.*, ___ U.S. ___, 141 S. Ct. 1183, 1197 (2021) (appellate courts "should not answer more than is necessary to resolve the parties' dispute" on appeal).

IV. **Conclusion**

For the foregoing reasons, the ALJ's decision is vacated, and the case is remanded on an open record for the reasons stated above.

IT IS SO ORDERED.

Dated: February 21, 2023

_____
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE